Dardis *v.* Cuda, Appellant.

Argued October 6, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harold R. Schmidt,* with him *John L. Laubach, Jr.,* and *Rose, Rose & Houston,* for appellant.

*P. J. McArdle,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 8, 1954:

With all the progress that has been made in science, invention and mechanical ingenuity, civilization has not yet achieved the mark of a driverless car. Hence the law assumes that if an automobile is seen dashing along a street with nobody behind the wheel, fault somewhere has sent the careening vehicle on its destructive journey.

On the afternoon of April 3, 1950, a Cadillac automobile in just such a condition with a terrorized and helpless passenger in it swept down Diamond Street in Pittsburgh, leaped the curb at the intersecting Smithfield Street, bounded over the pavement and crashed into a drug store, carrying before it the plain-

tiff Ann Dardis who had been waiting on the corner for a street car.

The driver of the car, Mrs. Frances X. Cuda, testified that she had stopped the car (a Cadillac) on Diamond Street, between Grant and Smithfield Streets, in order to allow her passengers, a sister and her mother, to get out so that they might enter Kaufman's Store for shopping, whereupon she had intended to proceed on down Diamond Street. She and her sister successfully descended from the car and were on the pavement but as Mrs. Anderson, the defendant's mother, prepared to leave the vehicle, the car began to move, it increased its momentum and finally terminated its disastrous journey at and into the drug store at the corner. (Other persons were injured in the same accident.)

Mrs. Cuda testified that she had turned the Cadillac's front wheels toward the curb, applied the brakes, turned off the ignition and put the engine into reverse gear. An expert witness called by the defendant stated on cross-examination that if the gear shift of a Cadillac automobile is in reverse, it cannot move forward. Thus, the case presented a simple question of fact for the jury to decide. Had the defendant exercised every due care in leaving, even momentarily, a car, in a heavily trafficked metropolitan area, on a street with a 4.87% descending grade?

The facts in the case of *Helfrich v. Gurnari*, 78 Pa. Superior Ct. 449, were somewhat analogous to those in the case at bar. There, the defendant parked his car on a street and entered an establishment where he remained three minutes. When he returned the car was gone. Driverless it had proceeded some 200 feet across a public square and had struck the plaintiff, pinning her against a telephone pole and inflicting serious injuries. There was no evidence how the ma-

chine got started. A verdict was returned against the car owner, who upon appeal argued that there was no proof of negligence on his part. The Superior Court affirmed the verdict and said: "It is true there is no positive proof, but there is sufficient to allow the jury to infer that the accident occurred through the defendant's carelessness. Whether the defendant overcame this evidence by his proof is a question for the jury. The defendant was the owner and had control of the machine. It was his duty, when he parked it, to see that it was in such a condition that it would remain where it was. In the ordinary course of things such accidents do not happen, if the person controlling the car uses proper care. As stated above, only three minutes elapsed between the defendant leaving the car, and his return and finding it gone. It is possible that within this small space of time someone may have started the car, but the probabilities are all against this theory. When anyone leaves a car and within such a short space of time as here stated, the car is found without a driver, some distance away, the jury can, under the circumstances, be permitted to draw the inference that he did not leave the car in proper condition and unless he produces evidence which is believed by the jury, that explains the accident, the jury has a right to believe he was negligent."

The principle of negligence laid down in the *Helfrich* case was approved by this Court in the case of *Henderson v. Horner*, 287 Pa. 298, where, in affirming a verdict returned in favor of a pedestrian who was also struck by a driverless car, we said: "From the facts shown, defendant's negligence, is not properly guarding against such an accident as happened, could be inferred, and his explanations were for the jury . . . In the case at bar, the jurors evidently did not accept defendant's explanations and believed that he had

failed to take the usual precautionary measures to prevent the car from moving during his absence; hence the verdicts for plaintiffs, on which the court below properly entered judgments."

In the case of *Hickerson v. Daskam,* 313 Pa. 379, we quoted with approval the charge of the Trial Judge in the *Helfrich* case, *supra.*

The law in this type of accident cases is thus rather well established, and there is no reason to disturb here the verdict of the jury which had ample evidence on which to base its conclusion of negligence on the part of the defendant-driver of the Cadillac car.

Judgments affirmed.